## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIBETH CAMERO, | |
| *Plaintiff*, | |
| v. | No. 19-cv-1558 (DLF) |
| TOM VILSACK, Secretary of Agriculture, | |
| *Defendant.*[1] | |

### MEMORANDUM OPINION

Plaintiff Maribeth Camero brings this employment discrimination action against Tom Vilsack in his official capacity as Secretary of Agriculture.  Before the Court is the Secretary's Motion to Dismiss and Motion for Summary Judgment, Dkt. 25.  For the reasons that follow, the Court will grant the Secretary's motion.

## I.      BACKGROUND

Since January 9, 2006, Camero has worked as an IT Specialist within the U.S. Department of Agriculture.  Def.'s Statement of Material Facts ¶ 1, Dkt. 25-2.[2]  She suffers from venous malformations, which "cause[] her veins to develop abnormally," and migraines.  *Id.* ¶ 5.  In May 2013, Camero was, based on these disabilities, granted a reasonable accommodation of telework three days per week.  *Id.* ¶ 8.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Tom Vilsack, the Secretary of Agriculture, has been substituted for Sonny Perdue as the defendant.

[2] The Court cites to the defendant's Statement of Facts if a fact is undisputed.  If a fact is disputed, the Court will indicate as such.

On May 28, 2019, Camero filed a complaint in this Court against the Secretary of Agriculture alleging that, at various points in her employment, the Secretary failed to accommodate her and interfered with her reasonable accommodations, in violation of the Rehabilitation Act, Compl. ¶¶ 46–77, Dkt. 1; discriminated against her on the basis of her national origin and retaliated against her for exercising her rights to reasonable accommodation, in violation of Title VII of the Civil Rights Act and the Rehabilitation Act, *id.* ¶¶ 78–93; and interfered with her rights under and retaliated against her, in violation of the Family and Medical Leave Act (FMLA), *id.* ¶¶ 94–98. She alleges that the Secretary disregarded her telework accommodations between March and May of 2017, *id.* ¶¶ 48–52, between September 16 and 23 of 2017, *id.* ¶ 55, and from September 2018 onwards, *id.* ¶¶ 63–77. She further alleges that she "became a target" for discrimination and retaliation, including when she received an "Unacceptable" performance appraisal for fiscal year 2017 in November 2017. *Id.* ¶ 83. Finally, she alleges that the Secretary failed to approve her valid FMLA leave requests in September and October 2018. *Id.* ¶¶ 95–98. The Secretary moved to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. 25.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff

the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).  Nonetheless, the burden is on the plaintiff to establish subject-matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  And the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### B.    Summary Judgment

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims."  *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

### A.   Exhaustion

A federal employee bringing claims under Title VII and the Rehabilitation Act must timely exhaust administrative remedies before filing suit in federal district court. *See Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 33 (D.C. Cir. 2014); *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *see also* 29 U.S.C. § 794a(a)(1). The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted). For Title VII claims, a "plaintiff's . . . failure to exhaust her administrative remedies does not deprive the Court of jurisdiction." *Morris v. Off. of Pers. Mgmt.*, No. 20-0016, 2021 WL 2188143, at *4 (D.D.C. May 28, 2021); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019); *Koch v. Walter*, 934 F. Supp. 2d 261, 269 (D.D.C. 2013). For Rehabilitation Act claims, in contrast, this Circuit considers failure to administratively exhaust a jurisdictional defect. *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Morris*, 2021 WL 2188143, at *3; *Williams v. Perdue*, 2020 WL 1892045, at *4 (D.D.C. Apr. 16, 2020); *Williams v. Brennan*, 320 F. Supp. 3d 122, 128 (D.D.C. 2018); *McIver v. Mattis*, 318 F. Supp. 3d 245, 250 (D.D.C. 2018). In such cases, a defendant's exhaustion argument is construed as a motion to dismiss for lack of subject-matter jurisdiction. Because failure to exhaust would preclude jurisdiction, "the plaintiff bears the burden of alleging facts sufficient to establish that . . . she exhausted administrative remedies." *Brennan*, 320 F. Supp. 3d at 127.

To exhaust administrative remedies for Rehabilitation Act and Title VII claims, a complainant must complete two steps. First, she "must consult a[n] [Equal Employment Opportunity (EEO)] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). She must do so "within 45 days of the date of the matter alleged to be discriminatory." *Id.* § 1614.105(a)(1). Second, if the matter is not resolved through informal counseling, the complainant must file a formal administrative complaint within 15 days of receipt of notice from the Counselor of the right to file a complaint. *Id.* § 1614.106(b). Failure to take either of these steps precludes the complainant from filing suit in federal court. *See Doak v. Johnson*, 19 F. Supp. 3d 259, 270 (D.D.C. 2014) ("[T]he Court cannot hear the plaintiff's failure to accommodate claims because she did not timely contact an EEO counselor within 45 days of the department issuing a decision that she viewed as discriminatory."); 29 C.F.R. § 1614.407 (authorizing suit in federal district court only when a complaint "has filed an individual complaint"); *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012) ("Filing a formal complaint is a prerequisite to exhaustion . . . .").

The Court will dismiss for lack of jurisdiction all but one of Camero's Rehabilitation Act claims and grant summary judgment on all but one of her Title VII claims for failure to exhaust. Camero's first contact with an EEO Counselor occurred on December 12, 2017, Def.'s Statement of Material Facts ¶ 26, more than 45 days after the Secretary allegedly failed to provide her with reasonable accommodations from March 24 to May 11, 2017, Compl. ¶¶ 49–54, and September 16 to 23, 2017, *id.* ¶ 55; discriminated and retaliated against her by not allowing her to speak at a phone conference in July 2017; and discriminated and retaliated against her by requesting the status of a ticket she was assigned on October 12, 2017, *id.* ¶¶ 80–81; Def.'s Statement of Material Facts ¶¶ 43–44. Further, although Camero timely initiated contact with an EEO counselor about

the Secretary's alleged failure to provide her with reasonable accommodations starting in September 2018 and through the present day, Compl. ¶¶ 63–73; Pl.'s Further Statement of Material Facts ¶ 27, Dkt. 28-1, she never filed a formal EEO complaint, *see* Ex. at 21–26, Dkt. 28-2 (EEOC informal investigation completed on March 6, 2019); Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 46 (citing no evidence in record that Camero ever submitted a formal complaint).  Thus, this Rehabilitation Act claim also was not properly exhausted.

Camero's various arguments otherwise are unavailing.  First, the continuing violations doctrine, *see* Pl.'s Opp. at 6–9, Dkt. 28, does not apply because the Secretary's alleged discrimination against Camero, retaliation against her, and interference with her reasonable accommodations were discrete employment actions, not part of an allegation of an ongoing hostile work environment.  *See Koch v. White*, 134 F. Supp. 3d 158, 165–66 (D.D.C. 2015) (explaining that, after *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the continuing violations doctrine does not apply to "discrete acts of discrimination" or to "ongoing failure to accommodate," but does to "claims alleging a hostile work environment").  Second, simply initiating contact with an EEO counselor, *see* Pl.'s Opp. at 9–13, does not fulfill the separate requirement that a claimant file a formal EEO complaint.  *Hamilton*, 666 F.3d at 1350 (holding that a complainant "cannot rely on the EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint").  Finally, contrary to Camero's contention, *see* Pl.'s Opp. at 13–14, events that arose *after* the EEOC finished investigating Camero's first—and only—formal EEO complaint were not reasonably expected to grow out of the charge of discrimination in that complaint.  In this Circuit, a claim is "reasonably related" to an EEO complaint if, "at a minimum," it would "arise from the administrative investigation that can

reasonably be expected to follow the charge of discrimination."[3]   *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (citation omitted).   Camero's allegations that the Secretary interfered with her accommodations after September 28, 2018, *see* Def.'s Statement of Material Facts ¶ 47; Compl. ¶¶ 63–76, cannot be considered reasonably related to her formal EEO Complaint, as the investigation related to that complaint concluded on September 14, 2018, Def.'s Statement of Material Facts ¶ 45, over a week before the alleged interference.

### B.   Performance Review

Camero's only remaining, properly exhausted claim is that she was discriminated and retaliated against when her supervisor issued her an "Unacceptable" annual performance review in November 2017.  Compl. ¶ 83.  Where, as here, a plaintiff offers only circumstantial evidence of discrimination or retaliation, courts evaluate the claims using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) (discrimination); *Na'im v. Clinton*, 626 F. Supp. 2d 63, 75 (D.D.C. 2009) (retaliation).  Under that framework, the employee "must first make out a prima facie case" of discrimination.  *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019).  The burden then shifts to the employer to "come forward with a legitimate reason for the challenged action."  *Id.*  If the employer does, the district court "need not—and should not—decide whether the plaintiff actually made out a prima facie case."  *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis omitted).  Four factors are "paramount in the analysis" of

---

[3] The Court notes that the D.C. Circuit has not settled whether the Supreme Court's holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" in *Morgan*, 536 U.S. at 113, controls over the "like or reasonably related" standard previously applied by this Circuit.  *See Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022) ("We have twice reserved the question whether *Park* survives *Morgan*.  We do the same here . . . ." (citations omitted)).  The Court assumes, for purposes of argument, that the "like or reasonably related standard" continues to apply.

whether an employer has met its burden at step two: (1) the employer must produce evidence that would be admissible at trial for a finder of fact; (2) "the factfinder, if it believed the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the employer's justification must be "facially credible in light of the proffered evidence"; and (4) the employer must provide a "clear and reasonably specific explanation" for its action that is "articulated with some specificity." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019) (citations and internal quotation marks omitted).

The Secretary has provided a non-discriminatory, non-retaliatory reason for Camero's negative performance review. As her supervisor explained in his performance review, Camero:

> ha[d] participated in data calls and audit activities with accurate information[;] however on occasion the timeliness was not sufficient to support the specific requirement. Various telecommunication request[s] have been noted where the assigned task ha[d] been initially address[ed] by [Camero] but [went] untouched for unacceptable periods of time. Many instances fellow team members had to complete the task including the Branch Chief of networking and Telecommunications.

Turner Decl. Ex. A at MC537, Dkt. 25-4. This explanation is a credible, specific reason that is reasonably supported by admissible evidence. For example, contemporaneous emails in the record show that Camero was assigned a task on January 25, 2017, and failed for almost two months to respond to at least three follow-up emails. *See* Turner Decl. Ex. B at MC129–33. On another occasion, Camero did not act on a third-party vendor request for over two months, and her supervisor emailed her to note that "[t]hese types of issues are not in line with your performance standards[,] which can affect the Public Health mission of [the agency]." *Id.* at MC158. Similarly, Camero did not complete a request to order two iPhones, until her supervisor emailed her over a month later to ask her to address the request immediately. *Id.* at MC181–83. Camero also failed to provide in a timely fashion audit information to her co-worker, despite multiple reminders. *Id.*

at MC147–53. She repeatedly missed scheduled calls with her team, *see id.* at MC135–37, and she does not contest that her co-workers "had to complete tasks assigned to [her] because of the delay [she] caused by . . . failing to complete . . . tasks," Def.'s Statement of Material Facts ¶ 20. Tellingly, during her deposition, Camero herself admitted that "there is evidence in the record that would support" her negative performance review. Camero Dep. at 189–90, Dkt. 25-1.

Where a defendant has provided a legitimate reason for terminating an employee, the burden shifts to the employee to show that the reason was pretextual. At this stage, the Court "must conduct one central inquiry . . . : whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Iyoha*, 927 F.3d at 566 (internal quotation marks omitted); *see also Na'im*, 626 F. Supp. 2d at 76 (applying same analysis in retaliation context). "[T]he issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations and internal quotation marks omitted). To show pretext, a plaintiff can point to numerous sources of evidence of "illicit motive," including "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

None of the scant evidence that Camero offers to show pretext persuades the Court that a reasonable jury could conclude that the Secretary's reason for her negative performance review was pretextual. Camero contends that her co-worker, Adrianna Vialpando, was a comparably

situated employee who was treated inconsistently because she did not receive a negative performance rating. *See* Pl.'s Opp. at 15–16.  But an inference of discrimination can only be drawn "from disparate treatment of comparable employees [if] all of the relevant aspects of [the plaintiff's] employment situation are nearly identical to those of the comparator." *Bennett v. Solis*, 729 F. Supp. 2d 54, 61 (D.D.C. 2010) (alteration and internal quotation marks omitted).  Vialpando was not "nearly identical" to Camero because there is no evidence in the record that she was "ever . . . reprimanded for untimely responses on work assignments." Def.'s Statement of Material Facts ¶ 56; *cf.* Pl.'s Opp. at 16 (citing no evidence that Vialpando had similar performance problems). Camero also argues that the Secretary's failure to give her a Performance Improvement Plan before her performance review is evidence of pretext, *see* Pl.'s Opp. at 16, but agency policy does not require that an employee receive an improvement plan before an "Unacceptable" review, Abbott Decl. ¶ 7, Dkt. 29-2.  Finally, Camero's assertions that she was faulted for not completing tasks "not exclusively assigned to her," that her absence during conference calls was only a problem after she "asserted her right to follow her reasonable accommodation telework schedule," and that the Secretary improperly withdrew her reasonable accommodation "as punishment for the Unsuccessful performance rating," Pl.'s Opp. at 16–17, are unsupported by any evidence in the record and thus do not constitute evidence of pretext. *See Ruiz v. U.S. Dep't of Just.*, 636 F. Supp. 2d 85, 88 (D.D.C. 2009) ("In opposing a summary judgment motion, [the] plaintiff may not [rely on] conclusory allegations . . . , but rather must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks and citation omitted)).  In sum, the Court will grant summary judgment in favor of the Secretary on Camero's claims that her "Unacceptable" performance review was discriminatory and retaliatory because Camero has not established that the Secretary's proffered reason for the negative review was pretextual.

C.    FMLA

The Court will also grant summary judgment in favor of the Secretary on Camero's federal FMLA interference and retaliation claims, Compl. ¶¶ 10, 94–98.  Camero does not contest that, because she is a federal employee with more than 12 months of service, she is a Title II employee who has no private right of action under the FMLA.  *See* Pl.'s Opp. at 18; Def.'s Mem. at 23–24, Dkt. 25-1; 5 U.S.C. §§ 6381 *et seq*.  Summary judgment on her FMLA claims is therefore appropriate.  *See Manga v. Carranza*, No. 18-cv-437, 2020 WL 1451584, at *5–*6 (D.D.C. Mar. 25, 2020); *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 201 (D.D.C. 2008).  The Court will not consider Camero's attempts in her opposition to reframe her FMLA claims as not stand-alone claims, but rather evidence that the Secretary interfered with her reasonable accommodations or discriminated and retaliated against her, *see* Pl.'s Opp. at 18–19, because such claims were not made in her complaint, *see* Compl. ¶¶ 94–98.

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motion to dismiss and motion for summary judgment.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH<br>United States District Judge

December 19, 2022